## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE  DIVISION

| | | |
|---|---|---|
| **JEFFREY D. CHERIPKA,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:22CV00173 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **SHERIFF ERIC HESS, ET AL,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| | ) | |
| Defendants. | ) | |

*Jeffrey D. Cheripka, Pro Se Plaintiff; Debra S. Stafford, HUDGINS LAW FIRM P.C., Alexandria, Virginia, for Defendants Hess and Bishop.*

Jeffrey D. Cheripka, a Virginia jail inmate proceeding pro se, filed this action in state court, raising both federal and state law claims.  The defendants have filed a Notice of Removal and a Motion to Dismiss, and Cheripka has responded.  He has also moved for remand of the case to state court, and the defendants have responded with objections.  After review of the records from state court and submissions to this court, I conclude that the Motion for Remand must be denied, and the Motion to Dismiss must be granted.

### I.  PROCEDURAL BACKGROUND.

In mid-May 2020, Cheripka filed a Complaint in the Fluvanna County Circuit Court alleging violations of his federal civil rights and various state law claims.  Notice of Removal and Exhibits, ECF No. 1.  The events on which he bases his

claims allegedly occurred when he was detained in the state courthouse holding area on several dates between August 29, 2019, and March 13, 2020. Among other things, he claims that he was denied the lunch meal on one occasion, had insufficient access to drinking water, and had paperwork about his charges for sex offenses placed in his pocket without his consent. Cheripka asserts that these events violated his rights under the First, Fourth, and Fourteenth Amendments, actionable under 42 U.S.C. § 1983.[1] He asserts various state torts as well.

The original named defendants were Fluvanna County Government, Fluvanna County Sheriff Department, and Police Officer John Does. Recs. of Fluvanna Cnty. Cir. Ct. No. CL20000904-00, ECF No. 10. Fluvanna County and Fluvanna Sheriff Department filed dispositive motions. In June 2021, Cheripka had the original Complaint served on Fluvanna Sheriff Eric Hess and Deputy Bishop, who were not named as defendants to that pleading. After a hearing on the dispositive motions in

---

[1] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Claims concerning the lawfulness of an arrest are appropriately analyzed under the Fourth Amendment. *See, e.g., Clem v. Corbeau*, 284 F.3d 543, 549–50 (4th Cir. 2002) ("[T]he Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force against a free citizen."). During the period at issue in this case, however, officers had concluded Cheripka's arrest and had detained him to face criminal charges and pretrial detention. Therefore, I will analyze his claims under the standard applicable to a pretrial detainee, applying the Due Process Clause of the Fourteenth Amendment, and not the Fourth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.).

November 2021, the state court granted Cheripka's request to change the defendant Sheriff Department to Fluvanna County Sheriff's Office, and then dismissed the case as to those defendants.  The court also granted defendants Hess and Bishop an opportunity to file briefs in opposition to Cheripka's attempt to add them as defendants.

Thereafter, Cheripka filed a Request for Nonsuit.  On February 24, 2022, the circuit court conducted a hearing on the nonsuit request.  In January 2021, however, without leave of court, Cheripka had filed a motion seeking leave to file an amended complaint to add claims against John Doe#1/Deputy Bishop, three other John Does, and "Fluvanna County Sheriff."  *Id.* at 148.[2]  At the February 2022 hearing, Cheripka withdrew his nonsuit request and decided that he wanted to pursue his amended claims against Hess and Bishop and other John Doe defendants.  The court granted Cheripka leave to amend to add Hess and Bishop, but denied him leave to amend to sue other, John Doe defendants.  The court's Order provided that Hess and Bishop "were named defendants as of February 24, 2022," and were "served as of" that date. *Id.* at 260.

On March 25, 2022, the defendants filed a Notice of Removal under 28 U.S.C. § 1441 to remove the case from the state court to this court.  They attached a

_____

[2]  Page numbers in citations to the record refer to the numbers assigned by this court's electronic docketing system.

copy of an "Amended Complaint" as Ex. F to that Notice. As grounds for removal, they cited this court's original jurisdiction over Cheripka's constitutional claims under § 1983 and supplemental jurisdiction under 28 U.S.C. § 1367 regarding his state law claims arising from the same facts. The court obtained the state court's file, which is now part of this court's electronic record, ECF No. 10.[3] The defendants then filed a Motion to Dismiss.

Cheripka responded to the defendants' motion, but also filed a Motion to Remand challenging the validity of the removal. The defendants filed a brief in opposition to remanding the case to state court. But their brief stated that "if plaintiff were to formally dismiss . . . all of his claims arising under federal law and the U.S. Constitution, and confirm that only state law claims remain in his Amended Complaint, then defendants would consent to remand." Opp'n 3, ECF No. 18. The

---

[3] The Amended Complaint on which the parties have based their arguments in this case was purportedly signed and dated on October 27, 2020. The state court's record does not indicate that this pleading was filed at that time, and the Amended Complaint does not list Hess or Fluvanna County Sheriff among the defendants. Cheripka's Motion for Leave to Amend, filed in January 2021, offers a list of defendants that includes "Fluvanna County Sheriff." Fluvanna Cnty. Cir. Ct. No. CL20000904-00, at 148, ECF No. 10. It appears from the record that the state court did not docket a copy of the Amended Complaint proposed by that motion when it was granted in part in February 2022. However, the Amended Complaint, docketed as Exhibit F to the Notice of Removal, ECF No. 1-6, tracks the language of the Motion for Leave to Amend. As such, I find that this Amended Complaint represents the state court's intended outcome in its rulings on the Motion for Leave to Amend, and Cheripka has not represented otherwise in responding to the defendants' Motion to Dismiss. Therefore, I will address the Amended Complaint as the pleading that the defendants removed to this court. I note that the Amended Complaint itself now appears in the state court record as an attachment to the state court's copy of the Notice of Removal, ECF No. 10, at 326–70.

court took the Motion to Remand under advisement and directed Cheripka to take one of two steps within fourteen days: to file a motion formally withdrawing all federal claims from his case or to file a declaration stating his intent to proceed with all claims. Cheripka filed a motion purporting to withdraw his federal claims. In response, the defendants asserted that they would consent to a remand only if Cheripka agreed to dismiss all his federal claims *with prejudice*. Based on his filings in the state court case, such as submitting an amendment without leave of court and a nonsuit request at the same time, the defendants expressed apprehension that if the case were remanded, Cheripka would amend in state court to refile his federal claims. Cheripka responded by stating: "I will not unilaterally relinquish any of my federal law and Constitutional claims under the U.S. Constitution." Resp. 1, ECF No. 27. He also asked to pursue discovery in this case. The court denied that request and refused to permit discovery until after the Motion to Dismiss was resolved.

## II. REMOVAL MATTERS.

When a plaintiff brings a civil action in state court, raising claims over which the federal district courts have original jurisdiction, the defendants to the federal claims may remove the case under 28 U.S.C. § 1441 to the appropriate federal court within the state for adjudication. The removal procedure is straight forward — within thirty days after the defendants are served with the plaintiff's state court Complaint, they may file a Notice of Removal, "signed pursuant to Rule 11 of the

Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  28 U.S.C. § 1446(a).

The defendants have met the removal requirements under § 1446(a).  Cheripka also alleges various state law claims, including but not limited to negligence, assault, intentional infliction of emotional distress, false imprisonment, and statutory claims for being held in shackles while at court for hearings.  The defendants concede that this court has supplemental jurisdiction over Cheripka's state law claims that arise from the same facts as his federal claims against them.  28 U.S.C. § 1367.

The defendants argue that Cheripka's Motion to Remand was not timely filed. I must agree.  Under 28 U.S.C. § 1447, "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."  Cheripka did not file his Motion to Remand until May 12, 2022,[4] at the earliest, nearly two months after the defendants filed the Notice of Removal.  His motion also does not, and cannot, show that this court has no original subject matter jurisdiction over his federal constitutional claims as asserted in the Amended Complaint, because they

---

[4] A court pleading submitted by an incarcerated person is considered filed as of the date when he delivers it to jail staff for mailing to the court. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735–36 (4th Cir. 1991).  Cheripka signed and dated his Motion to Remand on May 12, 2022, ECF No. 14.  Therefore, I will presume without finding that he also delivered it on that date to jail staff for mailing to the court.

clearly involve questions of federal law.  28 U.S.C. § 1331.  The defendants have muddied the timeliness issue somewhat by arguing in the Motion to Dismiss that the court has no subject matter jurisdiction over Cheripka's claims against them in their official capacities, based on their immunity defense.  That defense to one minor aspect of Cheripka's claims does not cancel out this court's clear, original jurisdiction over Cheripka's constitutional claims against the defendants in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (holding government official in role of personal-capacity defendant qualifies as "person" subject to being sued under § 1983).

For the stated reasons, Cheripka's Motion for Remand was untimely filed and has no merit.  Because the removal of the case was lawful, I will also deny Cheripka's motion seeking to withdraw his federal claims.

### III.  THE AMENDED COMPLAINT.

The Amended Complaint, as later amended to add Sheriff Hess as a defendant, is a lengthy, rambling document that does not clearly state a chronological narrative of what happened to Cheripka.  Notice of Removal Ex. F, Amended Complaint, ECF No. 1-6.  Liberally construed, it alleges the following events related to his claims. For purposes of addressing the Motion to Dismiss, I recount and accept as true the facts alleged in this pleading. *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).

On August 29, 2019, Cheripka voluntarily surrendered to a Fluvanna County sheriff's investigator, was arrested and transported to court, and was incarcerated later that night at the Central Virginia Regional Jail (CVRJ) in Orange County, Virginia, as a pretrial detainee.  Between August 29, 2019, and March 13, 2020, Cheripka was transported to the Fluvanna County courthouse for several in person court appearances.[5]  Before and/or after each of these appearances, he was detained in the courthouse holding area, where his claims against the defendants in this case arose.

## A.  Lunch Meal Denied.

Cheripka alleges that at the time of his arrest, he suffered from medical and mental health conditions, including "Major Depression, PTSD, extremely high anxiety," diverticulitis, high blood pressure and high cholesterol, among others.  Am. Compl. ¶ 4, ECF No. 1-6.  In August 2019, he was taking Gabapentin, 400 mg daily, prescribed by a psychiatrist for treatment of anxiety.  The doctor had advised Cheripka "not to stop taking Gabapentin abruptly."  *Id.* ¶ 27.

When Cheripka self-surrendered at the Fluvanna Sheriff's Office on August 29, 2019, he "brought all his medication" with him.  *Id.* ¶ 37.  After booking, around noon, officers transported him to the courthouse for a court appearance.  Again,

---

[5]    Cheripka indicates that after March 13, 2020, because of the COVID-19 pandemic, his court appearances were by video, rather than in person.

Cheripka brought his medication with him.  He asked Deputy Bishop and other deputies "on 4 different occasions that day for lunch," but was denied each time.  *Id.* ¶¶ 20, 21.  In response to his request, the officers told him, "later," "it's coming," "after this," and "no lunch."  *Id.* ¶ 21.  Cheripka states that he "needed to eat so he could take" his Gabapentin.  *Id.* ¶ 23.  He "informed all Sheriff Deputies he came in contact with that day, about his need to eat lunch and how his medications dehydrate [him] daily."  *Id.* ¶ 25.  Cheripka asserts that Bishop and others "created and enforced" a policy that "prevented" deputies from providing lunch to him.  *Id.* ¶ 33. He also asserts that Bishop denied him lunch "as punishment for his alleged crimes." *Id.* ¶ 22.

After Cheripka's court appearance that day, at around 6:00 p.m., officers transported him to CVRJ.  He had his medication with him.  But jail officials would not allow him to take his Gabapentin, pursuant to a policy prohibiting CVRJ inmates from using "narcotic medication."  *Id.* ¶ 37.  He

> became mentally and physically overwhelmed at app. 8:30 pm at CVRJ which led to [his] being stripped naked in front of app. 8 correction officers, placed in booking cell #1 with only a hole in the floor (no mattress, no blankets, no toilets, no sheets, no sink, no running water, no clothes and no mental health treatment for app. 12 hours.

*Id.* ¶ 39.

Cheripka alleges that after stopping the Gabapentin abruptly on August 29, 2019, he suffered withdrawal symptoms for more than a week, including "high

anxiety, major depression, 'suicidal thoughts,' sleep deprivation," and "twitching." *Id.* ¶¶ 36, 31. After he "tried to commit suicide" in October 2019, he began receiving an alternative medication for his mental health issues. *Id.* ¶ 34. Cheripka claims that stopping Gabapentin abruptly has also had a long-term effect: he sometimes "twitch[es] violently while sleeping into the concrete wall in his cell at CVRJ." *Id.* ¶ 35.

### B. Ordered to Carry List of Charges.

After Cheripka's court appearance on August 29, 2019, Bishop asked him "if he needed copies of his 4 felony charges." *Id.* ¶ 43. Cheripka said no, because the originals were being sent to his defense attorney. An attorney had warned him that for inmates charged with sex crimes, "danger lurks within the confines of CVRJ" from other inmates and staff. *Id.* ¶ 46. Cheripka asserts it is common knowledge that sex offenders are "bullied, beaten and possibly stabbed at jails and prisons." *Id.* ¶ 45. He claims that the CVRJ deputies knew this based on conversations with Bishop and others at the jail. *Id.* ¶¶ 45, 47. Even so, Bishop "intentionally and wantonly folded 1 charge sheet over [Cheripka's] new attorney information, lied to [him] vengefully when [he] asked what he was being handed," and then "stated it was only his new lawyer information." *Id.* ¶ 48. Bishop then "ordered [Cheripka] to put folded up attorney information and charge sheet into his pocket without [his]

consent." *Id.* ¶ 49. Cheripka claims that by this action, Bishop "discriminated against" him, "thus enacting his own brand of justice." *Id.* ¶ 68.

### C. Cell Conditions.

As stated, Cheripka was detained in the courthouse holding cell related to court appearances between August 29, 2019, and March 13, 2020. This cell did not have working sinks, soap, "hygiene kits," or sufficient toilet paper. *Id.* ¶ 50. Cheripka asserts that Bishop and other officials, by policy, imposed these conditions on him "as punishment for being arrested." *Id.* ¶¶ 50, 52.

### D. Drinking Water Delay.

On court days between August 29, 2019, and March 13, 2020, Cheripka spent unspecified periods of time in the holding cell where he had no direct access to drinking water. Cheripka told Bishop that "his medications caused [him] to dehydrate very easily." *Id.* ¶ 56. Even knowing "about [Cheripka's] issues with his medications," Bishop discriminated against him for his criminal charges "by withholding and/or seriously delaying [his] access to drinking water up to six hours on court day." *Id.* ¶¶ 57, 54.

### E. Leg Restraints.

On court days, Cheripka would be in leg restraints from six to eleven hours, while in a locked transport vehicle or a court holding cell. He asserts that he is not

a flight risk.  He claims these restraints were "punishment" to him as a detainee.  *Id.*
¶ 63.

### F.  Legal Claims.

Liberally construed, Cheripka's list of Legal Claims includes the following

asserted claims related to the remaining defendants, Bishop and Hess:[6]

1. When Bishop ordered Cheripka to put his charge sheet in his pocket to go to the jail on August 29, 2019, Bishop,

    a. discriminated against Cheripka in violation of the Fourth and Fourteenth Amendments, *Id.* ¶ 70;

    b. threatened Cheripka "with fear of violence and physical harm for exercising his rights to defend himself and seek justice through the court system on his felony charges," in violation of his "rights of free speech under the 1st Amendment," *Id.* ¶ 72;

    c. committed "intentional tort assault" under the Virginia Tort Claims Act (VTCA), *Id.* ¶ 74;

    d. violated his equal protection rights by punishing him in violation of the Virginia Constitution on the assumption that Cheripka was guilty of the criminal charges against him, *Id.* ¶ 83;

    e. through his "behavior and threats" violated Cheripka's "free speech rights" under Article I, Section 12, of the Virginia State Constitution, *Id.* ¶ 87;

---

[6] Cheripka's Amended Complaint includes some other alleged deprivations of his rights at the courthouse holding cell, such as having an envelope intended for his attorney mishandled and being denied "high fiber lunch and medically approved shakes" on certain dates.  Am. Compl. ¶¶ 62, 64, ECF No. 1-6.  Cheripka does not state facts indicating that Hess or Bishop had any personal involvement in these alleged issues, however.  Accordingly, I will grant their Motion to Dismiss as to any such claims without further discussion.

f.     committed a "discrimination tort" under the VTCA, *Id.* ¶ 89;

2.     Bishop denied Cheripka his lunch on August 29, 2019,

     a.     to punish him without due process under the Fifth Amendment, *Id.* ¶ 71;

     b.     to punish him and to discriminate against him, thus committing a "discrimination tort" under the VTCA, *Id.* ¶ 88;

3.     Not changing courthouse policy to fix holding cell sinks during COVID-19 and in light of Cheripka's serious medical conditions was grossly negligent and a tort, actionable under the VTCA, *Id.* ¶¶ 73, 76, 77;

4.     Holding Cheripka in leg restraints on court days for six or more hours constituted a "negligence tort," as well as a "punishment and false imprisonment tort" by Bishop and others under the VTCA, *Id.* ¶ 75, 78, 79;

5.     Bishop's delay in providing Cheripka access to drinking water in the holding cell when he needed water to counteract the dehydrating effects of his medication caused "physical injury to his kidneys and gall bladder by putting these organs under extreme conditions/stress, pain, anxiety, suffering, injury, intestinal issues (sharp pain) and dehydration," *Id.* ¶¶ 85, 80, and constituted,

     a.     deliberate indifference to his serious medical needs in violation of his rights under the Fifth and/or Fourteenth Amendments, *Id.* ¶ 85;

     b.     a "breach of duty" under the VTCA, *Id.* ¶ 81;

6.     Bishop's denial of hygiene kits, soap, and toilet paper in the holding cell was,

  a.  a "breach of duty" under the VTCA, *Id.* ¶ 81;

  b.  a violation of Cheripka's right to due process under the Virginia Constitution,[7] *Id.* ¶ 84;

 7.  Bishop, through his unspecified group decisions with others, committed the tort of intentional infliction of emotional distress (IIED) under the VTCA, *Id.* ¶ 82; and

 8.  A Sheriff's Office policy not to provide lunch for recently arrested individuals constituted a "gross negligence tort" against Cheripka under the VTCA, *Id.* ¶ 90.

As relief in this action, Cheripka seeks monetary damages and injunctive relief to order workable sinks in the holding cell.

 The defendants have filed a Motion to Dismiss.[8] Cheripka has filed a response to that motion. Thus, I find the motion to be ripe for consideration.

---

 [7] Cheripka also alleges as part of this state constitutional claim that the temperature in the holding cell was too cold.

 [8] The defendants submit in support of their motion a declaration by Bishop, and they rely on statements from that declaration in moving for dismissal of Cheripka's claims. Under Rule 12(d), "[i]f, on a motion [to dismiss] under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." In this case, the court has stayed discovery pending resolution of the Motion to Dismiss, and as such, Cheripka has not been allowed discovery in support of his § 1983 claims. Thus, I will address the pending dispositive motion only as a Motion to Dismiss without consideration of Bishop's declaration.

IV.  DISCUSSION.

A. The Standard of Review.

A complaint, to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[9]  A motion to dismiss tests only "the sufficiency of a complaint." *Langford v. Joyner*, No. 21-7737, 2023 WL 2335957, at *2 (4th Cir. Mar. 2, 2023).

> The district court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  However, the court need not accept legal conclusions, threadbare recitals of the elements of a cause of action, or conclusory statements.

*Id.*

B. Initial Matters.

Cheripka asserts his claims against the defendants in both their official and individual capacities.  "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Therefore, I will grant the defendants' Motion to Dismiss all claims against them in their official capacities.

Cheripka's prayer for relief includes a request for preliminary and permanent injunctive relief directing that the sinks in the courthouse holding cell be repaired.

---

[9]  I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

Records online indicate that after Cheripka was convicted and sentenced, he was transferred to a Virginia Department of Corrections prison facility. Since the criminal proceedings against him in Fluvanna County have concluded, he has not shown that he is now, or is reasonably likely to be, subject to the challenged conditions of that county's courthouse holding cell. As such, Cheripka's claim for injunctive relief is moot. *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive . . . relief with respect to his incarceration there."). I will grant the Motion to Dismiss as to the claims for injunctive relief.

## C.  State Law Claims.

Cheripka asserts his state law claims under the VTCA. The VTCA waives sovereign immunity for damage claims arising from "personal injury or death caused by the negligent or wrongful act or omission of any [state] employee while acting within the scope of his employment under circumstances where the Commonwealth . . . , if a private person, would be liable to the claimant." Va. Code Ann. § 8.01–195.3. The plain language of the VTCA allows negligence or wrongful conduct claims only against the Commonwealth, not against its individual employees. *Chamberlain v. Mathena*, No. 7:19-CV-00879, 2021 WL 789858, at *5 (W.D. Va. Mar. 1, 2021). Thus, Cheripka cannot prevail on any claim under the VTCA against

Hess or Bishop.  I will grant the Motion to Dismiss as to all VTCA claims — Claims 1(c), 1(f), 2(b), 3, 4, 5(b), 6(a), 7, and 8.

Cheripka raises three of his state law contentions under the Constitution of the Commonwealth of Virginia.  He offers no authority demonstrating that he has a private right of action by which to pursue separate, supplemental state law claims under these state constitutional provisions, and I may not construct such claims for him.  *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 728 (E.D. Va. 2015) (explaining limitations on private right of action under Virginia Constitutional provisions).  Therefore, I will grant the Motion to Dismiss as to his state constitutional claims — Claims 1(d), 1(e), and 6(b).

### D.  Sheriff Hess.

As stated, the state court granted Cheripka's motion to add Sheriff Hess as a defendant to this case.  However, the Amended Complaint does not include any reference to Hess or to his title as Fluvanna County Sheriff.  He is not named in the heading of the Amended Complaint itself or in any individual claim or allegation paragraph in the text of the pleading.  "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints."  *Lewis-Bey v. Wilson*, No. 3:17CV763, 2019 WL 4889261, at *3 (E.D. Va. Oct. 3, 2019).

Apparently, Cheripka intended to name Hess as the official behind the alleged jail policies he challenges in some of his state law claims. For reasons already stated, these claims asserted under the VTCA can only be brought against the Commonwealth and will be dismissed from this case.

A supervisory official may be held liable only "where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). "The doctrine of respondeat superior has no application" in a § 1983 action. *Id.* Cheripka has not stated facts showing that Hess's supervisory role or jail policies contributed to the constitutional deprivations that Cheripka alleges. In fact, he alleges that by failing to provide lunch or delaying access to drinking water, Bishop allegedly violated jail policies. Cheripka simply has not shown that Hess had any personal knowledge of or involvement in the events on which he bases his claims. I will grant the Motion to Dismiss as to all claims against Hess.

### E. Deputy Bishop.

Cheripka's claims against Bishop first focus on his act of ordering the inmate to place some papers in his pocket as he left the courthouse, including a printout of his criminal charges. In Claim 1(a), Cheripka alleges that this action discriminated against him in some way. I cannot agree that Cheripka has stated any discrimination claim against Bishop.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  To state an equal protection claim, the plaintiff "must prove that he was treated differently than other similarly situated inmates as a result of intentional discrimination and that his disparate treatment was not rationally related to any legitimate penological interest."  *Tate v. Parks*, 791 F. App'x 387, 391 (4th Cir. 2019) (unpublished) (citing *King v. Rubenstein*, 825 F.3d 206, 220–21 (4th Cir. 2016)).

Cheripka does not satisfy any of these elements.  He fails to show that Bishop's providing him, as a newly arrested inmate, a copy of his charges along with his attorney's contact information, was a departure from normal courthouse procedures for all such inmates.  Indeed, Cheripka's allegations do not show that Bishop treated him differently than any other inmate who was leaving the courthouse holding cell after being initially charged.

Nor does Cheripka state facts showing that Bishop provided him the information about his charges out of a purposeful discriminatory motive.  Cheripka asserts in a conclusory manner that Bishop took these actions to punish him for the nature of his charges.  As he fails to allege facts to support this assertion, however, I need not accept his conclusory statement as true.  *Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to

threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

Moreover, it is self-evident that sending paperwork with an inmate to ensure that he knows how to contact his attorney and what he is charged with is rationally related to a legitimate state interest in keeping inmates informed about their cases. I will grant the Motion to Dismiss as to Cheripka's constitutional discrimination claim.

Cheripka alleges in Claim 1(b) that Bishop's actions somehow threatened him with violence and violated his First Amendment right of free speech and his right to seek justice in court. Liberally construed, this claim appears to assert that Bishop put the paperwork in Cheripka's pocket to retaliate against him for making the Commonwealth try him on his charges.

To succeed on a retaliation claim under § 1983, Cheripka must establish that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020). The Fourth Circuit has cautioned, however, that courts must treat an inmate's claim of retaliation by jail officials "with skepticism." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Thus, conclusory allegations of retaliation are insufficient to survive dismissal. *Adams v.*

*Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994) (summarily dismissing retaliation claim as insufficient because it consisted merely of conclusory allegations and no facts to show retaliatory motivation).

On August 29, 2019, Cheripka exercised his constitutional right to access the court to seek justice and make his plea to the court. Thus, he has met the first element under the *Martin* analysis — exercising a right protected by the First Amendment. Cheripka also alleges what he considers to be an adverse action — being ordered to carry a copy of his criminal charges when he left the courthouse that would, he feared, put him at risk of violence by other jail inmates or staff. However, he fails to state facts about his circumstances to support the fear of harm he expresses. Cheripka himself alleges that CVRJ transport officers "will not allow" an inmate to transport any paperwork from the courthouse to the jail. Resp. Opp'n Decl. 4, ECF No. 15-1. Cheripka had also not yet been processed to enter the jail and does not allege that jail officials allowed him to keep his charge sheet with him once he completed the jail intake procedures. Moreover, he does not allege any circumstance during which another inmate saw the charges printed on the sheets Bishop placed in his pocket. Thus, I find no evidence in support of Cheripka's allegation that Bishop's action was an adverse action that threatened him with harm or that it arose from a retaliatory motive on Bishop's part to cause harm to Cheripka. I will grant

the Motion to Dismiss as to Claim 1(b), alleging retaliation in violation of the First Amendment.

In Claim 2(a), Cheripka alleges that he asked Bishop and other deputies for a lunch meal on August 29, 2019, but he never received one.  Cheripka claims that without a lunch meal that day, he was forced to abruptly stop taking Gabapentin and suffered withdrawal symptoms as a result.  As stated, "a pretrial detainee has a right under the Due Process Clause to be free from punishment before his guilt is adjudicated."  *Tate*, 791 F. App'x at 390.  I must address Cheripka's claim more narrowly as alleging deliberate indifference to his serious medical needs, a standard that is also applicable to claims from convicted inmates under the Eighth Amendment.  As stated in *Shover v. Chestnut*, 798 F. App'x 760, 761–62 (4th Cir. 2020) (unpublished):

> For a plaintiff to prevail on a claim of deliberate indifference to serious medical need, the plaintiff must first demonstrate that the injury suffered is both apparent and serious. The plaintiff must then demonstrate deliberate indifference on the part of the defendants. . . .
>
> Deliberate indifference is a very high standard — a showing of mere negligence will not meet it.  [The plaintiff must show] two slightly different aspects of an official's state of mind. . . . First, actual knowledge of the risk of harm to the inmate is required; second, the officer must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs. Moreover, an inadvertent failure to provide adequate medical care does not satisfy the standard, and thus mere negligence in diagnosing or treating a medical condition is insufficient.  Instead, officials must evince an inappropriate response to a serious medical condition or act

> intentionally to delay or deny the prisoner access to adequate medical care.

In other words, Cheripka must have pled "sufficient facts to plausibly allege that [Bishop] actually knew about his serious medical condition and the risk[]" that failing to provide him lunch would prevent him from taking his anxiety medication and lead to serious side effects. *Langford*, 2023 WL 2335957, at *2.

Cheripka's allegations about missing lunch on August 29, 2019, simply do not make the necessary showings to support a claim that Bishop was deliberately indifferent to his serious medical need to take food with his medication. First, the Amended Complaint does not allege that Bishop had any involvement in a decision to transport Cheripka from the Sheriff's Office to the courthouse at midday without a lunch meal. Second, when Cheripka allegedly asked for lunch, Bishop and/or others did not say no — they said (or implied) that he would get food later. Moreover, Cheripka does not allege that any doctor had informed him that Gabapentin should only be taken with food. Nor does he allege that he told Bishop he needed food to take his medication. In short, the Amended Complaint simply does not provide sufficient facts from which to infer reasonably that Bishop knew his actions regarding the inmate's lunch request created a significant risk that Cheripka would not take his Gabapentin and would experience serious withdrawal symptoms and suicidal thoughts later that evening. Thus, Cheripka fails to state the

elements of deliberate indifference, and I will grant the Motion to Dismiss as to Claim 2(a).

In Claim 5(a), Cheripka asserts that Bishop was deliberately indifferent to his serious medical needs when he delayed providing Cheripka with drinking water on on August 29, 2019, and on other days when the inmate was detained in the holding cell before or after a court appearance.  Cheripka alleges that he had no access to drinking water in the holding cell itself, because the sinks were inoperable.  He also asserts that he told Bishop his medication caused him to become dehydrated more quickly.  Cheripka contends that delays of drinking water in the holding resulted in unspecified injury to his kidneys and gall bladder as well as dehydration, anxiety, and painful intestinal issues.

Again, Cheripka's allegations simply do not meet the deliberate indifference standard.  He admits that the amount of time he spent in the courthouse holding cell differed with each court appearance.  The longest stay he mentions was around six hours.  He also does not claim that he *never* received drinking water during any of those stays in the holding cell — rather, he complains that Bishop and others *delayed* providing him with drinking water.  Cheripka merely asserts without factual support that delays in drinking water caused the dire physical symptoms he alleges.  And he does not allege that he informed Bishop of any such symptoms while he was in the holding cell.  I cannot find that Cheripka has pled "sufficient facts to plausibly allege

that [Bishop] actually knew" about a significant risk that unspecified delays in providing him drinking water would lead to serious injuries or medical complications.  *Id.*  I will grant the Motion to Dismiss as to Claim 5(a).

Cheripka complains at times in the Amended Complaint that Bishop failed to follow policies providing that individuals detained in the courthouse holding cell should receive meals and drinking water.  Even assuming without finding that such violations may have occurred, violations of state policies or procedures do not amount to violations of constitutional rights cognizable in a § 1983 case.  *Riccio v. Cnty. of Fairfax,* 907 F.2d 1459, 1469 (4th Cir. 1990) (holding if state law grants more procedural rights than Constitution requires, state official's failure to abide by that state law is not federal issue).  Cheripka also fails to present legal grounds on which he could litigate violations of jail policies against the defendants.

Finally, liberally construing Cheripka's submissions, he may also be attempting to claim that Bishop violated his constitutional rights related to other conditions in the holding cell.  These complaints include denial of hygiene kits, soap, and sufficient toilet paper, and being kept in leg restraints even while he was confined in the holding cell.

To state a substantive due process claim challenging detention conditions, a pretrial detainee must allege facts showing that the condition was "so disproportionate or arbitrary that [it was] not related to legitimate penological

objectives and amount[ed] to punishment." *Tate*, 791 F. App'x at 390. Specifically, the "detainee must show that the challenged treatment or condition[] [was] either (1) imposed with an express intent to punish, or (2) not reasonably related to a legitimate nonpunitive objective, in which case an intent to punish may be inferred." *Id.* On the other hand, "not every hardship encountered during pretrial detention amounts to punishment in the constitutional sense." *Anderson v. Quality Corr. Health Care*, No. 9:19-CV-02086-HMH-MHC, 2021 WL 276059, at *4 (D.S.C. Jan. 5, 2021), R. & R. adopted, No. 9:19-2086-HMH-MHC, 2021 WL 271841 (D.S.C. Jan. 27, 2021), *aff'd*, No. 21-6455, 2022 WL 670866 (4th Cir. Mar. 7, 2022) (unpublished). There is "a de minimis level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 n.21; *Robles v. Prince George's Cnty.,* 302 F.3d 262, 269 (4th Cir. 2002) (finding pretrial detainee must show that official action was not "de minimis" to invoke due process protections).

A sheriff has a statutory duty to "ensure that the courthouses and courtrooms within his jurisdiction are secure from violence and disruption." Va. Code Ann. § 53.1-120(A). Keeping inmates in leg restraints at the courthouse, a less secure location than a jail or prison, is reasonably related to furthering such security goals. Thus, I cannot reasonably infer that the practice of using restraints is intended to punish detainees. *Bell*, 441 U.S. at 540 (1979) ("Restraints that are reasonably related to the institution's interest in maintaining . . . security do not, without more,

constitute unconstitutional punishment. . . .").  Furthermore, Cheripka does not allege that he ever informed Bishop that his restraints were too tight or were otherwise harming him.

I also cannot find that Cheripka has stated facts showing any § 1983 claim that other holding cell conditions constituted intentional punishment.  His Amended Complaint makes general complaints about going without soap, running water, or toilet paper in the holding cell.  He provides no details about how these issues affected him personally or for how long; about the notice, if any, that he gave to Bishop that he had these needs; or about Bishop's responses to such requests.  For Cheripka to experience one or more of these inconveniences for six hours or less during his courthouse visits is, without more, insufficient to support a punishment claim.  *Collins v. Ainsworth*, 382 F.3d 529, 545 (5th Cir. 2004) (finding denial of phone calls and mattresses for less than 24 hours to be de minimis).  Therefore, I will grant the Motion to Dismiss as to all of Cheripka's claims regarding detention conditions.

## V.  CONCLUSION.

For the stated reasons, it is **ORDERED** as follows:

1.     Cheripka's Motion to Remand, ECF No. 14, and Motion to Withdraw All Federal Claims, ECF No. 20, are DENIED;

2.     The Motion to Dismiss, ECF No. 4, is GRANTED; and

3.      The action is DISMISSED WITH PREJUDICE.

A separate Judgment will be entered herewith.

ENTER:  March 23, 2023

/s/  JAMES P. JONES
Senior United States District Judge